IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

TERRELL SINCLAIR HILLIARD                                                              PLAINTIFF

v.                                          Civil No. 1:16-cv-01023

SERGEANT MYERS, Union County
Detention Center (UCDC); LIEUTENANT
GREEN, UCDC; LIEUTENANT
K. PENDLETON, UCDC; and SERGEANT
TEMPLE, UCDC                                                                          DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed *pro se* by Plaintiff, Terrell Sinclair Hilliard, under 42 U.S.C. § 1983.  Before me is Defendants' Motion for Summary Judgment.  ECF No. 20.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  ECF No. 14.  Pursuant to this authority, I find this Motion is ready for decision and issue this Memorandum Opinion.

## BACKGROUND

Plaintiff filed his Complaint on March 30, 2016, alleging he was subjected to excessive force and denied medical care during his incarceration in the Union County Detention Center ("UCDC").  ECF No. 1.  Plaintiff is no longer incarcerated and currently resides in El Dorado, Arkansas.  He is suing Defendants Sergeant Justin Myers, Lieutenant Steve Green, Lieutenant Kevin Pendleton, and Sergeant John Temple in both their official and individual capacities. Plaintiff's Complaint does not specify what relief he is seeking.  ECF No. 1.

Defendants filed a summary judgment motion and a brief in support thereof on February 17, 2017, alleging they are entitled to judgment as a matter of law because: 1) Plaintiff cannot show that a policy or custom of Union County was the moving force behind any alleged constitutional violations; 2) Defendants' use of force against Plaintiff was reasonable; and 3) Defendants were not deliberately indifferent to Plaintiff's medical needs.  ECF Nos. 20, 21. Defendants submitted the following exhibits in support of their motion: Exhibit 1 - Affidavit of Defendant Justin Myers (ECF No. 21-1); Exhibit 2 – Plaintiff's Intake Sheet dated October 3, 2015 (ECF No. 21-2); Exhibit 3 – Plaintiff's Intake Sheet dated October 6, 2015 (ECF No. 21-3); Exhibit 4 – Affidavit of Christopher A. Smith; Exhibit 5 – Witness Statement signed by Plaintiff dated October 19, 2015; Exhibit 6 – Grievance dated October 21, 2015 (ECF No. 21-6); Exhibit 7 – Grievance dated October 6, 2015 (ECF No. 21-7); Exhibit 8 – October 25, 2015 Inmate Chart Notes List; and Exhibit 9 – Consent for Medical Treatment and Liability Waiver Form dated October 25, 2015 (ECF No. 21-9).

To assist Plaintiff in responding to the motion, I sent a questionnaire asking him to agree or disagree with various statements set forth by Defendants as undisputed facts.  Plaintiff filed the questionnaire as his Response to the summary judgment motion on March 3, 2017.  ECF No. 24. Plaintiff states he was arrested and charged with residential burglary on October 6, 2015 and he was booked into the UCDC at 7:30 p.m..  ECF No. 24.  Plaintiff alleges Defendant Myers "tased me over the amount of times required, busted my nose, slammed me.  I was high on P.C.P so Im not fully aware of it all."  ECF No. 1.  Plaintiff goes on to state "They did not use the restraint chair neither time, they tased and gased me over the required amount of times repeatedly for several day while in a cell alone.  They took me straight out the cell knowing I was high they skipped over the restraint chair."  ECF No. 1.  With respect to Defendant Pendleton, Plaintiff

alleges he used "excessive force, left deep cuts on my wrist from handcuffs and admitted it!" "He tased me twice are more within a 10min frame." ECF No. 1. Plaintiff claims Defendant Green used excessive force and denied him adequate medical care. As to Defendant Temple, Plaintiff claims he "restrained me and admitted to going overboard. He stated that to me." ECF No. 1. Plaintiff also alleges his nose was bleeding as a result of Defendant Myers "slamming my head into the floor busting my nose. I wanted medical attention and they refused." ECF No. 24.

Defendants state there were two separate incidents that occurred soon after Plaintiff was booked into the UCDC On October 6, 2015. First, Defendants claim upon being placed in the holding cell in the booking area, Plaintiff became loud and disruptive, kicking his cell door and screaming threats at detention officers. ECF No. 20. Plaintiff was ordered to stop kicking the door and screaming and was warned if he did not stop he would be pepper sprayed. ECF No. 21-1. Despite the warning, Plaintiff continued to scream threats and kick his cell door disrupting the booking process. ECF No. 21-1. Defendant Myers then deployed pepper spray on Plaintiff. ECF No. 21-1. The detention officers then placed Plaintiff in a shower in the nurse's station for decontamination. According to Defendants, while in the shower Plaintiff pulled the shower curtain down, took the shower curtain rods and backed into the corner of the shower in a combative stance. ECF No. 21-1. Defendant Myers was able to get Plaintiff to give him the shower rods without further incident. After Plaintiff's cell was decontaminated, he was placed back in the cell.

At 2:45 a.m. on October 7, 2015, Plaintiff again became loud and disruptive in the holding cell. ECF No. 21-1. Upon opening his cell door, Defendant Green advised Plaintiff he was being moved to F-Pod due to his disruptive behavior. Plaintiff was ordered to gather his belongings at which time Plaintiff refused the order and became verbally aggressive. He was then told to place his hands behind his back in order to be handcuffed. Plaintiff then began swinging his arms

3

violently. Plaintiff physically fought with Defendant Green and Officer Christopher Smith (a non-party to this lawsuit). As Plaintiff began to pull away from both officers, he was given multiple commands to stop fighting or he would be tased. ECF No. 21-1. Plaintiff was tased but one of the barbs struck a towel and did not make contact with Plaintiff. ECF 21-4. Plaintiff continued to struggle and Defendant Green then deployed his taser which had little effect. Defendant Temple then arrived on the scene. Defendant Green, Temple and Officer Smith were eventually able to gain control of Plaintiff. Plaintiff was then handcuffed, leg shackled and taken to his cell in F-Pod. ECF No. 21-4.

In his Response Plaintiff admits he does not have knowledge to agree or disagree with the following allegations made by Defendants: 1) Plaintiff took the shower curtain rods and backed into the corner of the shower in a combative stance; 2) As a result of the incident in the booking area and the shower, Defendant Myers made a report of the incident and noted Plaintiff violated several USCO policies; 3) Defendant Green opened Plaintiff's cell door and advised him he was being moved to F-Pod due to his disruptive behavior - Plaintiff was ordered to gather his belongings and Plaintiff refused the order and became verbally aggressive; 4) Plaintiff was told to place his hands behind his back in order to be handcuffed and instead began swinging his arms violently; 5) Plaintiff physically fought with Defendant Green and Officer Christopher Smith; 6) When Plaintiff began to pull away from Defendant Green and Officer Smith, he was given multiple commands to stop fighting or he would be tased; 7) Plaintiff refused to stop fighting and was then tased; 8) Despite being tased, Plaintiff continued to struggle and Defendant Green then deployed his taser which had little effect on Plaintiff; 8) Defendant Temple then arrived on the scene and three officers – Temple, Green and Smith – were able to gain control of Plaintiff even though Plaintiff continued to physically resist them; 9) Plaintiff was then handcuffed and leg shackled and

4

taken to his cell in F-Pod. ECF No. 24. Despite the fact Plaintiff has no memory of these events, he claims he remembers "being slammed, dragged, tased & gased at the same time while handcuffed." ECF No. 24.

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

1. Official Capacity Claim

Section 1983 provides a federal cause of action for the deprivation, under color of state law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the

5

United States. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege a defendant acted under color of state law and they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants Patterson and Miller are treated as claims against Miller County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2)

> Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e*., that the custom was the moving force behind the constitutional violation.

*Id*., 725 F.3d at 828 (citations omitted).

Plaintiff's only allegation relating to official capacity liability against Defendants is found in his Complaint and Response where he describes the custom or policy that he believes caused the violation of his constitution rights as "inadequate policies procedures; custom" and "they did not use the restraint chair neither time, they tased and gased me over the required amount of time". ECF Nos. 1 and 24. Plaintiff has not presented any evidence of an unconstitutional policy or custom of Union County that contributed in any way to a violation of Plaintiff's civil rights. Instead, Plaintiff appears to allege Defendants failed to follow the actual policies of the UCDC relating to the use of force. Such a claim is not actionable. *See Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997) (no § 1983 liability for violation of prison policy). Accordingly, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.

    2. Excessive Force

In evaluating an excessive force claim under the Eighth Amendment, the relevant inquiry is whether the force used was applied in a good-faith effort to maintain or restore discipline or was used to maliciously and sadistically to cause harm. *See U.S. v. Miller,* 477 F.3d 644, 647 (8th Cir. 2007). In deciding whether a particular use of force was reasonable, the Court is required to consider whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by correctional officers, the efforts by the officers to temper the severity of the forceful response, and the extent of the inmate's injuries. *See Johnson v. Hamilton,* 452 F.3d 967, 972 (8th Cir. 2006) (citation omitted).

First, Plaintiff admits to being high on PCP at the time force was used against him. ECF Nos. 1 and 24. Second, Plaintiff acknowledges he has no memory of most of the events that occurred on the evening of October 6, 2017, and the early morning hours of October 7, 2015. ECF Nos 1 and 24. Although Plaintiff claims to remember "being slammed, dragged, tased & gased at the same time while handcuffed" (ECF No. 24) the record, like his memory of the events, does not support this allegation.

According to affidavits submitted by Defendant Myers and Christopher Smith (a non-party to this lawsuit) and official reports submitted by these individuals, on October 6 and 7, 2015, the Defendants warned Plaintiff several times to stop kicking, yelling, fighting and resisting the officers. On the evening of October 6, 2015, when Plaintiff did not comply with the warnings and orders of Defendants he was pepper sprayed. In the early morning hours of October 7, 2015, when Plaintiff fought the officers and refused to be handcuffed he was tased. Defendants' actions were objectively reasonable in light of the facts and circumstance confronting them. The force used was applied in a good-faith effort to maintain or restore discipline or was not used to maliciously cause harm to Plaintiff. There are no controverting facts offered by the Plaintiff. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim for excessive force.

    3. Denial of Adequate Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006). To prevail on his Eighth Amendment claim,

Plaintiff must prove Defendants Patterson and Miller acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

In order for Plaintiff to establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Plaintiff alleges he filed grievances relating to his injuries received from the force used against him but he has not provided any evidence the grievances exist. ECF No. 24. Defendants argue Plaintiff did not file a grievance claiming to be injured from the separate incidents and the affidavits submitted by Defendant Myers and Officer Smith state Plaintiff was not seriously injured. ECF Nos. 21-1, 21-4. However, Defendants do acknowledge Plaintiff submitted one medical request dated October 25, 2015, which could relate to the October 6 and 7, 2015 incidents.

ECF No. 21-8.  In this request Plaintiff states under the description of problem "need to see medical for pictures for documentation purposes please."  *Id.*  According to Defendants, when Plaintiff was asked if he needed to see the doctor or nurse for any complaint, he refused to see the doctor or nurse because they would not take photos of his alleged injuries.  ECF No. 21.  A refusal for medical treatment form was signed Plaintiff on October 25, 2015 and placed in his jail file.  ECF No. 21-9.  On this form Plaintiff wrote "I do not need medical because they won't take pictures".

The record demonstrates Plaintiff did not complain of any injury until October 25, 2015 – eight days after the incidents occurred.  Even then, Plaintiff only sought medical attention in an effort to get someone to take photos of his alleged injuries.  ECF No. 21-8.  After being told by the nurse that photos would not be taken, Plaintiff signed a Consent for Medical Treatment and Liability Waiver Form on October 25, 2015 stating "I do not need medical".  ECF No. 21-9.  Consequently, Plaintiff has not shown Defendants were deliberately indifferent to Plaintiff's serious medical needs and his claims against them fail as a matter of law.

## CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (ECF No. 20) is **GRANTED.**  All claims against Sergeant Justin Myers, Lieutenant Steve Green, Lieutenant Kevin Pendleton, and Sergeant John Temple are hereby dismissed with prejudice.  A judgment of even date consistent with this opinion shall issue.

**DATED this 20th day of March 2017.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE
